IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Antonio Rashad Trimmier, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. 4:17-cv-634-BHH |
| v. ) | |
| ) | |
| Warden, Broad River Correctional ) | **ORDER** |
| Institution, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

This matter is before the Court upon Petitioner Antonio Rashad Trimmier's ("Trimmier") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the matter was referred to a United States Magistrate Judge for initial review. On August 31, 2017, Magistrate Judge Thomas E. Rogers III filed a Report and Recommendation ("Report"), outlining the issues and recommending that the Court grant Respondent's amended motion for summary judgment. Petitioner filed objections to the Report, and the matter is ripe for review. For the reasons set forth herein, the Court adopts the Magistrate Judge's Report and grants Respondent's amended motion for summary judgment.

## BACKGROUND

The Greenville County Grand Jury indicted Petitioner in September of 2008 for armed robbery and possession of a weapon during the commission of a violent crime. Attorney Amanda Lackland represented Petitioner at a jury trial before the Honorable John C. Few on October 5-6, 2009. The jury convicted Petitioner of both charges, and Judge Few sentenced him to concurrent terms of 22 years for armed robbery and five years for

possession of a weapon during the commission of a violent crime.

Petitioner filed a direct appeal and was represented by assistant appellate defender M. Celia Robinson. The final *Anders* brief on appeal raised the following issue: "The trial judge erred reversibly in denying the defense motion to sequester the witnesses in a case where the State relied exclusively on the testimony of three cooperating witnesses so[ ] that the refusal to sequester allowed the prosecuting witnesses to conform their testimony." (ECF No. 11-1 at 195.) Petitioner filed a pro se brief, which the South Carolina Court of Appeals received on February 4, 2011. The South Carolina Court of Appeals dismissed the appeal and granted counsel's petition to be relieved on February 8, 2012. The remittitur was sent to the Greenville County Clerk of Court on March 30, 2012.

Petitioner filed an application for post-conviction relief ("PCR") on March 7, 2013, arguing that he was being held in custody unlawfully due to ineffective assistance of counsel for the following reasons: "(a) Counsel fail[ed] to investigate/violation of Confrontation Clause; (b) Counsel fail[ed] to produce other evidence and documents before tr[ia]l; (c) Counsel fail[ed] to explain the importance of tr[ia]l rights before going to tr[ia]l." (ECF No. 11-1 at 216.) In addition, Petitioner alleged: "Improper comments from prosecutor/prosecutor misconduct." (*Id.*)

The state served its return on July 12, 2013, and the Honorable Letitia H. Verdin held an evidentiary hearing on October 22, 2014. Petitioner appeared and was represented by Richard H. Warder. Petitioner testified, and he presented the testimony of his mother, Tasha Trimmier, and his trial counsel, Ms. Wicker.[1] Judge Verdin took the

---

[1] Trial counsel was referred to as Amanda Lackland at the time of trial but was referred to as Amanda Wicker at the time of the evidentiary hearing.

matter under advisement after the hearing.

On November 12, 2014, before Judge Verdin issued a ruling, Petitioner, through counsel, filed a "motion to amend the record and include exhibits which supports applicant's testimony," in which he sought to amend the record to include six exhibits that he did not introduce at the hearing. (*Id.* at 272-73.) Judge Verdin granted the motion and allowed the state to file a return, which was submitted on November 19, 2014.

The state opposed Petitioner's motion and argued that because the record was closed, it could not challenge the authenticity of the additional exhibits and cross-examine witnesses about them. The state also argued that the motion was improper because counsel merely submitted the documents at Petitioner's request.

Judge Verdin signed an order of dismissal on February 21, 2015, denying relief and dismissing the application with prejudice. Judge Verdin addressed Petitioner's claims that (1) trial counsel's inadequate investigation resulted in her failing to discover evidence, specifically, geographic monitoring information from the Home Incarceration Program ("HIP") that would support an alibi; (2) trial counsel was ineffective in failing to impeach prosecution witnesses on cross-examination with their gang membership and pending charges; (3) counsel failed to properly prepare Petitioner for trial; and (4) prosecutorial misconduct. (*Id.* at 321-28.)

Petitioner appealed the denial of his PCR application and was represented by assistant appellate defender Susan B. Hackett. On October 27, 2015, Petitioner filed a petition for writ of certiorari presenting the following issues:

    I.    Did trial counsel's failure to investigate, marshal, and present evidence of Petitioner's alibi–the fact that he was on house arrest at the time of the robbery–result in ineffective assistance in violation of

> the Sixth and Fourteenth Amendments to the United States Constitution?
>
> II. Did trial counsel's failure to investigate, marshal, and present evidence to impeach the testifying co-defendants result in ineffective assistance in violation of the Sixth and Fourteenth Amendments to the United States Constitution?

(ECF No. 11-9 at 3.) By order filed January 13, 2017, the South Carolina Supreme Court denied the petition for writ of certiorari, and the remittitur was issued on January 31, 2017, and filed by the Greenville County Clerk of Court on February 2, 2017.

Petitioner filed the instant § 2254 petition on March 8, 2017, raising the following claims: (1) "Petitioner received ineffective assistance of counsel when his trial counsel failed to present evidence of his alibi"; and (2) "Petitioner received ineffective assistance of counsel when his trial counsel failed to present evidence to impeach the testifying co-defendants." (ECF No. 1 at 7, 10.) Respondent filed a response to the petition and moved for summary judgment. On August 31, 2017, the Magistrate Judge issued his report recommending that the Court grant Respondent's motion for summary judgment, and Petitioner filed timely objections to the Magistrate Judge's Report.

## STANDARDS OF REVIEW

### I. The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the

Magistrate Judge with instructions. See 28 U.S.C. § 636(b).

## II.  Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## III.  Habeas Corpus

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that §

2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the facts of the particular case. *Id.* at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Ineffective Assistance of Counsel

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," and that such assistance be effective. U.S. Const. Amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Id.* at 687-98. The first part of the test, a court's evaluation of counsel's performance, must be "highly deferential" under this standard, so as not to "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Fields v. Attorney Gen. of Maryland*, 956 F.2d 1290, 1297-99

(4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir. 1985). To establish prejudice and thereby fulfill the second prong of the ineffective assistance test, the challenging defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694-95.

## **ANALYSIS**

### I.    Ground One: Counsel's Failure to Present Alibi Evidence

In considering Petitioner's first ground–that trial counsel was ineffective for failing to present alibi evidence that Petitioner was under house arrest at the time of the armed robbery–the Magistrate Judge determined that the issues were ruled upon by the PCR court and raised on PCR appeal. As the Magistrate Judge explained, the PCR court stated as follows:

> The Applicant's trial counsel testified that, as a matter of trial strategy, she believed that the evidence of HIP monitoring and gang affiliation would be more prejudicial than helpful. She also feared that the use of HIP's GPS monitoring would open the door to evidence of the Applicant's prior criminal record. Trial counsel's belief in the potential harmful effect of such evidence was so strong that she moved to limit gang-related testimony prior to trial. This Court finds that such determinations of trial counsel are entitled to strong deference in accordance with *Simpson v. Moore*, 367 S.C. at 597, 627 S.E.2d at 706. The Applicant's trial counsel did not testify at the PCR hearing on the subject of additional undiscovered evidence.

(ECF No. 11-1 at 325.)

In the Report, the Magistrate Judge noted that trial counsel did not testify, as found by the PCR court, that as a matter of strategy she believed the use of the HIP monitoring evidence would open the door to evidence of Petitioner's prior criminal record; Respondent also acknowledged the same in its memorandum. In fact, the Magistrate Judge determined

7

that the record offered no support for the PCR court's conclusion that trial counsel's failure to investigate and present evidence of Petitioner's house arrest and GPS monitoring was a matter of trial strategy, although the Magistrate Judge did note that counsel testified that it was her trial strategy to keep out all evidence of gang affiliation and to show co-defendants' potential bias by revealing plea deals through cross-examination. Because the Magistrate Judge disagreed with the PCR court's initial finding, he considered ground one as though Petitioner could show deficient performance on the part of counsel for failing to investigate and present alibi evidence, and he next considered whether Petitioner could demonstrate the second prong of the *Strickland* analysis. Ultimately, the Magistrate Judge determined:

> While counsel could have investigated and potentially presented evidence that Petitioner was on HIP/GPS monitoring, Petitioner has failed to show prejudice, assuming *arguendo*, error. While Petitioner submitted a copy of his Legal Summary in his Amended Motion to Amend the [PCR] Record revealing that he was under an order for house arrest at the time of the charged crime and that he completed his house arrest on February 2, 2008 [ ], this evidence does not define the specific terms of his house arrest. Further, the testimony of Petitioner's mother at the PCR hearing was of limited support. She testified that while under the HIP, he was generally at home except when he was at school or work which does not exclude him from engaging in the crime. In other words, there is no testimony or evidence as to what times Petitioner was in school or at work and if this included the time the crime occurred around 9:00 pm. Notable, his mother testified that he was at home "during the night" which does not preclude him from engaging in the conduct for which he was convicted. The record before this court does not disclose the protocol involved in HIP, and there was no testimony of the probation officer as to the terms of the HIP or of Petitioner's location at the time of the crime. Additionally, Petitioner testified at PCR that he intended to plead guilty in order to avoid trial, and that he asked his attorney if he could plead guilty pursuant to a plea agreement but was told that there were no more negotiations by the solicitor. [ ]

(ECF No. 19 at 14-15.)

In his objections, Petitioner contends that the Magistrate Judge erred in finding that

8

Petitioner failed to demonstrate prejudice (assuming Petitioner demonstrated error on the part of trial counsel for failing to investigate and present alibi evidence). Specifically, Petitioner states that the Magistrate Judge's finding "fails to account for the fact that the witnesses who placed Petitioner at the crime were all highly dubious characters with motivations to lie," and Petitioner urges the Court to consider this claim "in light of the full record before it which illustrates the weakness of the State's case." (ECF No. 20 at 1-2.)

After consideration of the record as a whole, the Court overrules Petitioner's objection. In all, the Court agrees with the Magistrate Judge that even assuming deficient performance on the part of trial counsel for failing to investigate and present evidence of a potential alibi, Petitioner's claim still fails because the record contains no evidence to show that Petitioner suffered prejudice as a result of the error. In other words, Petitioner has not shown that there is a reasonable probability that the outcome of the trial would have been different but for counsel's alleged error. As the Magistrate Judge determined, the record contains no evidence to indicate that the HIP/GPS monitoring prevented Petitioner from committing the crime. Stated differently, Petitioner's reliance on the mere fact that he was under a house arrest order at the time of the crime is not sufficient to show prejudice because the record contains no evidence showing the details or terms of the house arrest order, the times when Petitioner was at home or away from home at work or school, or any GPS log information as to Petitioner's actual whereabouts at the time of the crime. As the Magistrate noted, even if counsel erred by failing to investigate and present evidence of Petitioner's house arrest, Petitioner has not shown that this evidence actually provides him with an alibi. Thus, the Court agrees with the Magistrate Judge that the PCR court's ultimate rejection of this claim was not contrary to and did not involve an

unreasonable application of clearly established federal law, and it did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

**I.	Ground Two: Counsel's Failure to Impeach the Testimony of Co-Defendants**

In ground two, Petitioner contends that trial counsel was ineffective for failing to impeach the testimony of co-Defendants with evidence of their prior records and pending charges. In his Report, the Magistrate Judge first summarized Respondent's arguments in opposition, including the arguments: that Petitioner did not elicit any evidence from trial counsel directly relevant to this claim; that trial counsel's cross-examination did, in fact, impeach each co-Defendant; and that trial counsel made a strategic decision not to pursue the issue of co-Defendants' pending charges to avoid issues related to gang affiliation.

Next, the Magistrate Judge considered the testimony presented at the PCR hearing. As the Magistrate Judge noted, Petitioner testified that trial counsel failed to investigate and discover the backgrounds of two of the three testifying co-Defendants, Hardy and Williams, and Petitioner claimed that these co-Defendants had pending charges with which counsel should have impeached them. The Magistrate Judge noted that trial counsel did cross-examine both Hardy and Williams, obtaining testimony of discrepancies in their statements. In addition, the Magistrate Judge noted that trial counsel discussed these discrepancies in her closing argument, and the Magistrate Judge quoted the following portions of counsel's closing argument:

> Let's focus on the testimony you heard from the three co-defendants. They are really the only evidence linking Antonio to this incident. You heard testimony from Deshaun James, from Marteze Hardy, and from Keith Williams. You got to see their demeanor as they answered questions, evaluate their credibility, see what biases they had.

10

You heard first from Dashaun James who told you he doesn't really remember what he was doing on January 3rd of 2008, that morning, most of the day. Antonio was not somebody he knew very well from the school. He just kind of knew of him.

As to the incident, he told you someone said to follow that car. He did not know who. He certainly didn't know what was going on. Let's also keep in mind that he just plead guilty to Strong Armed Robbery which means he did have involvement in that. He knew what was going on. He said someone told him to turn off the lights. He did not know who that was either.

He says that he was driving slowly. Antonio jumped out of the car, went up to the driveway. Initially he said it was five minutes later that Antonio came back to the car. Then there was a follow-up response where the Solicitor said five minutes. He said on, no, no, no. Two minutes, two minutes. He said Antonio pulled out some money and gave some, dispersed it to everyone. He said that he knew Antonio had a gun. He can't describe it. He did not see it.

You next heard from Marteze Hardy. He gave a statement actually pretty close to the time of the incident on February 12th of 2008. It was in the conference room at his high school. Two investigators are questioning him.

He told you Investigator Weiner led the discussion. He was just asked to fill in the details. Actually, the investigator wrote the statement for him. In his statement, he says he was working at McDonald's. He got off 11:30 that night. That is when his normal shift ends. Yesterday, he told you he got off early. It was dark and that's why he said 11:30 in the statement. He thought maybe that was the right time even though he said he got off early. Investigator Weiner told you he wrote that in the statement because that was the time Mr. Hardy said he normally got off from work at 11:30.

He also said that when they were in the car, someone just says follow that car. He don't know who the person is but somebody said it. He does not know what is going on. He had no idea at the time even though he had just plead guilty to Accessory after the Fact. He did not know what was going on. He said in his statement that Antonio had a gun. He described it as silver with brown grips. That is not what Officer Lanford testified to that the victim had told him. It was a small black handgun.

He told you that Antonio walked out of the car, walked to the victim's house and returned walking. That is important. Officer Lanford reported that the victim, the suspect had taken off running, not walking back from the driveway. He later follows up his statement to Solicitors and says Keith Williams was also involved. That is not something he initially mentioned in

his statement.

Finally you heard from Keith Williams. He talked to the Solicitors and the investigator later, about a year later actually, February 13 th of 2009. He is also questioned at Southside High School, his school, in a conference room with an investigator. He was asked a lot of questions about this incident. You heard him say that. The investigator led the discussion. He knew what he was talking about. He knows the details of January 3rd of 2008.

He told you they let Antonio out and he eventually came running back with money in his hand. In the statement that he gave, he said well only some was given to the driver. Nobody else got any. Yesterday, he told you that everybody got a cut of the money. He also told you yesterday that oh, by the way, Antonio had a gun. That is not something he mentioned [in] the statement. He says in my statement I only mentioned the important details. I think a gun is an important detail to include in a statement.

. . .

I told you at the beginning I wanted you to pay close attention to the details, not just the big picture. It is not just a general basic story.

Of course, the general basic story is going to be the same. They have investigators, Solicitors telling them basically what happened and asking them to fill in the details. That is why those details are so important. That is where the discrepancies are. It is not just discrepancies between each other which there are many of them. You heard them. It is discrepancies between what they said in their statements closer to the incident and what they testified to yesterday.

They are not sophisticated. They can't make it all click. These details, Ladies and Gentleman, just don't add up. There are too many discrepancies in those statements. Too many discrepancies between what each of them say.

I also ask you to observe whatever biases they have. They are all originally charged with Armed Robbery and Conspiracy. I told you up there and they confirmed that they know Armed Robbery carries 10 to 30 years and it is two strikes. But in exchange for testifying here yesterday, they got [to] cut a deal.

Marteze Hardy gets to plea to Accessory after the Fact. Only faces up to 10 years. Keith Williams is also only pleading to Accessory after the Fact, up to 10 years. No minimum. And a Disturbing Schools is going to be dismissed. Dashaun James pled guilty to Strong Armed Robbery. Carries up to 15. There is no minimum sentences on either one of those. Mr. Williams, he

12

thought he might even get probation for this. They're all going to be sentenced after they testify.

Ladies and Gentleman, these details, these discrepancies are important. They do matter. It is not just the big picture. It is these details. The fact that all of these co-defendants, those three co-defendants were offered a deal to testify is important. It matters. It is all important for you to consider because that is the evidence against Antonio. That is all that is linking Antonio to being there.

The State says that they have to, you will find out that the State has to prove beyond any reasonable doubt that Antonio was there and he committed these crimes. It is not a hunch he might be guilty. It's not by preponderance of the evidence. It is by clear and convincing evidence, it is beyond any reasonable doubt that he is guilty.

Ladies and Gentlemen, the State has not proven that. The statements by the co-defendants, their testimony, full of their biases, the discrepancies between each other are simply not enough. Thank you.

(ECF No. 11-1 at 169-76.)

After considering the foregoing, the Magistrate Judge concluded that trial counsel did discuss the charges against the co-Defendants as well as their plea offers and the various discrepancies in their testimony. In addition, the Magistrate Judge determined that even if Petitioner could somehow show deficient performance, he failed to show prejudice because he failed to offer evidence showing that the outcome of the trial would have been different based on additional cross-examination of co-Defendants. Accordingly, the Magistrate Judge found that the PCR court's rejection of this ground was not contrary to and did not involve an unreasonable application of clearly established federal law, and it did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

In his objections, Petitioner contends that the Magistrate Judge erred in finding that Petitioner did not provide evidence that his co-Defendants had prior convictions and that

13

evidence of pending charges would not have been admissible.  Petitioner contends that, pursuant to Rule 608(c) of the Federal Rules of Evidence, bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced and that, therefore, counsel could have used the pending charges in unrelated cases to show that the witnesses had a motive to assist law enforcement in securing a conviction against Petitioner.

        Contrary to Petitioner's assertions, the Court agrees with the Magistrate Judge that Petitioner is not entitled to relief on ground two.  First, as the Magistrate Judge noted, trial counsel did impeach each of Petitioner's co-Defendants by exposing the deals that each received and by pointing out inconsistencies in their testimony, and trial counsel testified that she made a strategic decision not to pursue the issue of pending charges to avoid wading into issues of gang affiliation, which she believed would be more prejudicial to Petitioner.  The Court finds no reason to second guess trial counsel's strategy, and because trial counsel did impeach Petitioner's co-Defendants, the Court finds that Petitioner has not shown deficient performance on the part of trial counsel.  Moreover, the Court notes that even assuming deficient performance on the part of trial counsel, the record contains no evidence to show prejudice.  Again, because trial counsel did impeach each of Plaintiff's co-Defendants, and because there is no evidence to indicate that any further impeachment would have altered the outcome of the trial, Petitioner has not shown prejudice.  Accordingly, the Court finds that the PCR court's rejection of this ground was not contrary to and did not involve an unreasonable application of clearly established federal law; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

## CONCLUSION

Based on the foregoing, it is hereby ordered that the Magistrate Judge's Report (ECF No. 19) is adopted; Respondent's amended motion for summary judgment (ECF No. 15) is granted; and Petitioner's objections (ECF No. 20) are overruled.

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
The Honorable Bruce H. Hendricks
United States District Judge

January 11, 2018
Charleston, South Carolina

## CERTIFICATE OF APPEALABILITY

The governing law provides:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller–El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). Here, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is denied.